RECEIVED
IN ALEXANDRIA, LA.

JAN 27 2010

TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DARREL GRANT LEDEE | DOCKET NO. 09-CV-744; SEC. P |
| VERSUS | JUDGE DEE D. DRELL |
| BEN OTWELL, ET AL. | MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION

**IMPORTANT NOTICE: COURTESY COPIES OF DOCUMENTS YOU FILE SHOULD NOT BE PROVIDED TO ANY JUDGE. ALL COMMUNICATIONS WITH THE COURT SHALL ONLY BE THROUGH DOCUMENTS FILED WITH THE CLERK OF COURT.**

Plaintiff Darrel Grant Ledee filed the instant complaint pursuant to 42 U.S.C. §1983, pro se and in forma pauperis. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC), and he is currently incarcerated at the Winn Correctional Center (WNC) in Winnfield, Louisiana. He claims that he has been denied adequate medical care, access to the courts, and has been sexually harassed by various defendants. He seeks injunctive relief and compensatory and punitive damages.

Plaintiff names as defendants: Ben Otwell, Dr. Engelson, Tanya Clark, Officer Lane, Officer Robinson, Officer Sapp, Officer Moore, Mona Heyse, Linda Steele, T. Womack, Myrtle Hardwell, Lisa Coleman, Mrs. Russell, Pat Thomas, Nicole Walker, Angel A. Martin, Angelia Davis-Woods, Michelle Smith-Kennedy, Case Manager Triplette, Tim Wilkinson, Linda Ramsey, Winn Correctional Center, Corrections

Corporation of America, CCA-Contracted Medical Provider, James LeBlanc, Richard Stalder, Louisiana Department of Corrections, Mr. Whithker, Captain Coleman, Lt. Braxton, Chief Glover, Chief Lucas, and the American Corrections Association.

## **Background**

Plaintiff claims that, on July 17, 2007, he submitted a petition for writ of habeas corpus in this Court. On April 28, 2008, it was recommended that the petition be dismissed, and Plaintiff was given ten days to file written objections to the report and recommendation. On May 20, 2008, Plaintiff filed a motion for extension of time to file his objection because he did not have access to the law library. The motion was granted. Plaintiff claims that he still could not access the law library, so he filed a second motion for extension of time, which was also granted. Plaintiff claims that he still could not gain access to the law library, and his petition was ultimately dismissed because he could not file an objection. [Doc. #1, p.24]

Plaintiff's next complaint is that his constitutional rights were violated by the State of Louisiana's contract with CCA. He complains that CCA negotiated a contract with Dr. Pacheco, Dr. Engelson and Pat Thomas to be the exclusive medical providers at WNC. Plaintiff alleges that this contract created a managed health care system at WNC. Plaintiff complains about the terms of the contract, especially the compensation plan, and claims that it

encourages the providers to act with deliberate indifference to the inmates' serious medical needs. [Doc. #1, p.27] Plaintiff thereby concludes that the alleged contract between CCA and the State of Louisiana is unconstitutional.

Plaintiff complains that he was subjected to sexual harassment on December 20, 2007 by maintenance employee Ben Otwell. On that date, Otwell told Plaintiff that he was being written up for putting a broomstick into a vent. Plaintiff denied that he was the one who put the broomstick in the vent, and Otwell allegedly replied, "...the next time you stick a broom up my vent, I'm going to get a broom and stick the broom handle up your ass." Plaintiff immediately reported the incident, and he states that Otwell apologized to him for the remark. Plaintiff refused to accept the apology because Otwell's comments amount to sexual assault and harassment. [Doc. #1, p.7] Plaintiff complains that Mr. Miles, Captain Coleman, Chief Glover, Chief Lucas, Lt. Braxton, and Warden Wilkinson, should have done something about Otwell's "threat." [Doc. #1, p.8]

Plaintiff filed an Administrative Remedy Procedure (ARP) about the Otwell incident that same date, but the ARP was not processed until months later. Plaintiff complained to Mona Heyse that his ARP had been improperly set aside rather than addressed in the order in which it was received. [Doc. #1, p.9] Plaintiff alleges that Heyse violated DOC policy and his constitutional right by

addressing the ARPs out of order. [Doc. #1, p.10] Plaintiff also claims that he tried to discuss the incident with Warden Wilkinson, but the warden was verbally abusive and did not want to hear what Plaintiff had to say.

Plaintiff also alleges that on June 25, 2008 and July 15, 2008, he submitted request forms asking to be placed on a special diet because he was losing weight. [Doc. #1, p.21] Angela Davis-Woods informed the medical director that Plaintiff had made only one recent sick call, and he did not mention his diet or weight loss. Plaintiff says that he informed Nicole Walker and Pat Thomas about his weight loss on September 9, 2008, and they did nothing about it. [Doc. #1, p.22] On September 11, 2008, Plaintiff informed his mental health counselor Michelle Smith-Kennedy and his case manager Ms. Tripplett about his weight loss. He claims that they did not do anything to help him either.[1] Plaintiff had filed an ARP about his weight loss on September 15, 2008, but it was denied because Plaintiff had failed to use the proper procedure of going through sick call. Plaintiff claims that he did use the procedure and go through sick call. He appealed the decision, but his appeal we denied.

On October 15, 2008, Plaintiff informed Sgt. Brown of his weight loss, and the sergeant notified the medical department.

---

[1] Elsewhere in his complaint, Plaintiff alleges that his weight loss was caused by a toothache that began on October 31, 2008.

Plaintiff was called into the infirmary where he was weighed by Dr. Pacheco. [Doc. #1, p.23] On October 21, 2008, Plaintiff saw Smith-Kennedy and told her that he had lost a lot of weight. She arranged for Plaintiff to see Dr. Buboltz, a psychologist, on November 7.

Plaintiff also complains that on October 31, 2008, he was in severe pain because of a "hole in his gums." He asked the floor officers for aspirin since they were "sitting down doing nothing." He waited for fifteen to twenty minutes, but they never brought him aspirin. After lunch, he spoke with the supervisor on duty, Mrs. Lane. She said that she would "look into it." [Doc. #1, p.13] Plaintiff reported the floor officers, who admitted that they forgot about Plaintiff's request for aspirin, but Plaintiff believes that they intentionally refused to give him aspirin. [Doc. #1, p.14]

Plaintiff alleges that, on October 27, 2008, he filled out a sick call for medical treatment for his tooth. Because he had still not received treatment by November 10, 2008, he filed an ARP. Linda Steele called Plaintiff when she received the ARP and told Plaintiff that the delay was caused by the dentist being short-staffed. [Doc. #1, p.15] Plaintiff finally received a response to his sick call on December 3, 2008, stating that he was "on the list" to see the dentist.

On December 23, 2008, Plaintiff saw the dentist, Dr. Engelson,

and told the doctor that he wanted to try to save his tooth. However, on December 30, 2008, Dr. Engleson determined that he would have to extract the tooth. Plaintiff refused to allow the extraction, and would not sign a "refusal of treatment" form. Plaintiff went to Lisa Coleman and "explained to her that he was not refusing treatment, he just didn't agree with Dr. Engleson's diagnosis." [Doc. #1, p.17]

Finally, on January 29, 2009, Plaintiff allowed Dr. Engelson to pull his tooth. Plaintiff claims that Dr. Engelson "messed up plaintiff's mouth." Id. The day after surgery, Plaintiff was in severe pain, and his over the counter pain relievers were not helping. On February 1, 2009, Plaintiff could not eat lunch because he was in so much pain, and he informed his case manager of his situation. [Doc. #1, p.21] He claims that he could feel that the dentist had broken a bone in his mouth. [Doc. #1, p.21.] Plaintiff alleges that he sent a dental request on February 2, 2009 and February 6, 2009. The dental assistant replied to the February 6th request stating that is was the first one they received, and she put Plaintiff on the call out list to see the dentist. [Doc. #1, p.21] Plaintiff was examined by the dentist on February 17, 2009, and he was prescribed antibiotics. I appears that Plaintiff has had no further trouble with that tooth.

## Law and Analysis

I. **Access to Court - Habeas Petition**

Plaintiff claims that his Petition for Writ of Habeas Corpus filed in the Lafayette Division of this Court in 2007 was dismissed in May 2008 because he was unable to file an objection to the Report and Recommendation of the Magistrate Judge. [Doc. #1, p.24] In that case, 07-cv-1190, Plaintiff was attacking his 2004 convictions for armed robbery following a guilty plea to those charges. In his motion for extension of time within which to file an objection to the Report and Recommendation, Plaintiff complained that his unit is **allowed access to the law library only one day per week, and on his unit's day, he only has about one to two free hours that he can actually take advantage of the library** based on his schedule. Plaintiff asked for thirty days to file his objection instead of ten days, and his motion was *granted* on May 12, 2008. On May 27, 2008, Plaintiff asked for another extension of time because his requests for additional time in the library were being denied by WNC. Plaintiff was *granted* another extension of thirty days within which to file his objection. No objection was filed by July 14, 2008, and the District Judge signed a judgment adopting the Report and Recommendation.

The right to access the courts guarantees "only that [inmates] be able to present their grievances to the courts." Farr v. Rodriguez, 2007 WL 4260940, *3 (5th Cir. 2007)(citing Lewis v. Casey, 518 U.S. 343, 360 (1996)). It does not guarantee unlimited access to generalized legal research. See id.; Jones v. Greninger,

188 F.3d 322, 325 (5th Cir. 1999). Limitations may be placed on library access so long as the regulations are "reasonably related to legitimate penological interests." Id. (quoting Turner v. Safely, 482 U.S. 78, 89 (1987)). Plaintiff discloses that he has *at minimum* one hour per week to use the law library. That means that with the roughly eight week extension, Plaintiff had at least **eight hours** to prepare his objection to the Report and Recommendation. [07-cv-1190, Doc. #13] Plaintiff's allegation that his petition was dismissed because he failed to file an objection, or his insinuation that the outcome would have been different had he filed a timely objection, is conclusory. The petition was dismissed because Plaintiff had not shown that the decisions of the Fifteenth Judicial Court or the Third Circuit Court of Appeals involved an unreasonable application of Federal law or unreasonable determination of facts. Plaintiff has failed to state a claim that he was denied access to the courts in May 2008.

## II. Contract with CCA

Plaintiff complains that the contract between the State of Louisiana and CCA and/or the contract between CCA and Dr. Pacheco, Dr. Engelson and Pat Thomas is unconstitutional at least in part because it creates a managed health care system at WNC. First, managed care plans, such as HMOs and PPOs, are legal and nearly ubiquitous in the United States. Second, states have been contracting with private prison management companies for many

years. In fact, private individuals operated local jails in the 18th century, and private contractors were heavily involved in prison management during the 19th century. See <u>Richardson v. McKnight,</u> 521 U.S. 399, 405 (1997)(citing G. Bowman, S. Hakim, & P. Seidenstat, <u>Privatizing the United States Justice System</u> 271, n. 1 (1992); D. Shichor, <u>Punishment for Profit</u> 33, 36 (1995)). Finally, Plaintiff has not presented allegations of how **his** constitutional rights were violated by the fact that a contract exists with a private prison management company. Plaintiff's claim should be dismissed.

### III. Verbal Threats

Plaintiff concludes that he was sexually harassed by the maintenance man's remark that he would attack Plaintiff with a broomstick if he caught Plaintiff sticking the broom handle in the vent. He also complains that Defendants Miles, Coleman, Glover, Lucas, Braxton, and Wilkinson did nothing about Otwell's alleged threat. Verbal threats, harassment, or abusive language do not give rise to Eighth Amendment claims. See <u>Siglar v. Hightower</u>, 112 F.3d 191, 193 (5th Cir. 1997); <u>McFadden v. Lucas</u>, 713 F.2d 143, 146 (5th Cir. 1983). Plaintiff's claim against Otwell should be dismissed as frivolous. Plaintiff's claim against the other defendants should also be dismissed because he does allege any constitutional violations by those defendants.

### IV. Administrative Remedies

9

Plaintiff filed an Administrative Remedy Procedure (ARP) about the threat allegedly made by Otwell, but the ARP was not processed until months later. Plaintiff alleges that Heyse violated DOC policy and Plaintiff's constitutional rights by addressing his ARPs "out of order." [Doc. #1, p.10] Plaintiff also claims that he tried to discuss the incident with Warden Wilkinson, but the warden was verbally abusive and did not want to hear what Plaintiff had to say. First, inmates do not have a constitutionally protected right to a grievance procedure. See, e.g., Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 138 (1977) (Burger, J., concurring) (applauding the adoption of grievance procedures by prisons, but expressly declining to suggest that such procedures are constitutionally mandated); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (holding state prisoners have no legitimate claim of entitlement to grievance procedure). Whether a prison system has no established grievance procedure, or does have a procedure but fails to adhere to it, an inmate has no basis for bringing a lawsuit. Id.; Bradford v. Kuykendall, 2005 U.S. Dist. LEXIS 32350, 2005 WL 1521016, 5 (E.D. Tex. 2005). Plaintiff's claim against Heyse for not following proper administrative remedy procedures should be dismissed.

Plaintiff's complaint that the Warden was verbally abusive and did not listen to his complaint regarding Ms. Heyse should also be dismissed. As discussed above, verbal threats, harassment, or

abusive language do not give rise to Eighth Amendment claims. See Siglar, McFadden *supra*.

**V.     Medical Care**

To prevail under 42 U.S.C. § 1983, Plaintiff must demonstrate that he was denied adequate medical care in violation of the Eighth Amendment to the United States Constitution. "Although the Eighth Amendment 'does not, by its precise words, mandate a certain level of medical care for prisoners[,]' the Supreme Court has interpreted it as imposing a duty on prison officials to 'ensure that inmates receive adequate ... medical care.'" Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain. See Easter, 467 F.3d at 463 (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991) (quoting Estelle v. Gamble, 429 U.S. 97 (1976)).

Deliberate indifference can be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally *denying or delaying* access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 467 F.3d at 104-105 (footnotes omitted)); see also Helling v. McKinney, 509 U.S. 25, 35-37 (1993).

### A. Weight Loss

On June 25, 2008 and July 15, 2008, Plaintiff submitted request forms asking to be placed on a special diet because he was "losing weight like crazy." [Doc. #1, p.21][2] Plaintiff alleges that he also *mentioned* his weight loss to Nicole Walker and Pat Thomas again on September 9, 2008, and they did nothing about it. [Doc. #1, p.22] On September 11, 2008, Plaintiff *verbally informed* his mental health counselor Michelle Smith-Kennedy and his case manager Ms. Tripplett about his weight loss, but they also took no action.[3] According to his amended complaint, Plaintiff made his first *actual written sick call for this issue on September 28, 2008.* He was examined by Ms. Davis-Woods and Dr. Pacheco on that date, and they noted that Plaintiff's weight on 10/18/07 was 150 pounds, while his weight on that date - 9/28/08 - was 130.6. No treatment was recommended. By the end of January 2009, Plaintiff had gained about eight pounds and his weight was back up to 138.4. While Plaintiff believed that he needed a special diet to gain weight, clearly the doctor's opinion was to the contrary. A disagreement with his medical treatment does not state a claim under the Eighth Amendment. See <u>Norton v. Dimazana</u>, 122 F.3d 286,

---

[2] In investigating Plaintiff's complaint, Angela Davis-Woods informed Medical Director Pat Thomas that Plaintiff had made only one sick call during that time period, but he did not mention his diet or weight loss at that time. While Plaintiff initially claimed that Davis-Woods was not being truthful, he determined later that she had, in fact, been correct. [Doc. #8, p.1]

[3] Elsewhere in his complaint, Plaintiff alleges that his weight loss was caused by a toothache that began on October 31, 2008.

292 (5th Cir. 1997), *citing* Young v. Gray, 560 F.2d 201, 201 (5th Cir. 1977); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Moreover, Plaintiff has not alleged any physical injury caused by his losing ten to twenty pounds. 42 U.S.C. §1997e(e) (*No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.*)

**B. Delay in Receiving Dental Care - 2008**

As noted above, Plaintiff requested dental care for a toothache at the end of October 2008. He had still not received any response by November 10, 2008, so he filed an administrative remedy procedure (ARP). Ms. Steele called Plaintiff upon receipt of the ARP and said that the delay was due to the dentist being short-staffed. [Doc. #1, p.15] On December 3, 2008, Plaintiff was informed that he was "on the list" to see the dentist. On December 23, 2008, Plaintiff finally received his dental examination. The dentist, Dr. Engleson, determined that he would have to extract Plaintiff's tooth, but Plaintiff refused to allow the extraction. [Doc. #1, p.17] Plaintiff went to Lisa Coleman and "explained to her that he was not refusing treatment, he just didn't agree with Dr. Engleson's diagnosis." [Doc. #1, p.17]

First, Plaintiff complains that he had to wait approximately two months to get in to see the dentist. A delay in medical care

can constitute an Eighth Amendment violation only if there has been deliberate indifference that results in substantial harm. See Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993). Plaintiff has not alleged deliberate indifference. He alleges that the dentist was short-staffed, not that they were intentionally not treating him. Second, to the extent that Plaintiff disagreed with the treatment proposed by Dr. Engleson, his claim is subject to dismissal. A disagreement with diagnosis or treatment does not state a claim under the Eighth Amendment. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997), citing Young v. Gray, 560 F.2d 201, 201 (5th Cir. 1977); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).

On January 21, 2009, Plaintiff experienced severe tooth pain and asked Officers Moore and Robinson for aspirin. They told him that he already received aspirin and would have to wait another hour to get his next dose. Plaintiff complains that they should have given him another dose at that time. [Doc. #1, p.19] This, too, alleges a delay in medical care, which can only constitute an Eighth Amendment violation if there has been deliberate indifference that results in substantial harm. See Mendoza v. Lynaugh, supra. Even if Plaintiff could prove deliberate indifference, he has not alleged substantial harm resulting from a one hour wait for aspirin. His claim against Moore and Robinson should be dismissed.

Because of his continued pain, Plaintiff finally allowed Dr. Engelson to pull his tooth on January 29, 2009. However, Plaintiff claims that Dr. Engelson "messed up plaintiff's mouth." The day after surgery, Plaintiff was still in severe pain, and his over-the-counter pain relievers were not helping. On February 1, 2009, Plaintiff could not eat lunch because he was in so much pain, and he informed his case manager of his situation. [Doc. #1, p.21] Plaintiff alleges that on February 2, 2009, he could feel that the dentist had "broken a bone" in his mouth. [Doc. #1, p.21.] Plaintiff alleges that he sent a dental request on that date and another request on February 6, 2009. The dental assistant replied to the February 6th request stating that it was the first one they received, and she put Plaintiff on the call out list to see the dentist. [Doc. #1, p.21] Plaintiff was examined by the dentist on February 17, 2009, and he was prescribed antibiotics for infection.

Plaintiff complains that the defendants failed to treat him timely and properly, resulting in the loss of his tooth and the subsequent infection. What he describes is akin to negligence or malpractice, which does not state a claim of a constitutional violation. See Stewart v. Murphy[4], 174 F.3d 530 (5th Cir. 1993),

---

[4]In Stewart v. Murphy, 174 F.3d 530 (5th Cir. 1999), the prisoner suffered from a variety of ailments prior to his incarceration, including incontinence and mobility problems. He developed decubitus ulcers that became infected and ultimately caused his death. One doctor who examined the inmate testified that he "had the worst bedsores she had ever seen." Id. at 536. There was also evidence that the prison doctor did not read the nurse's notes, the nurses did not always follow the doctor's orders, and the doctor failed to prescribe antibiotics. Id. at 535. Nevertheless, the Court held that this conduct "Is [not] sufficient to raise a material fact issue for deliberate

citing <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action"); <u>Williams v. Treen</u>, 671 F.2d 892, 901 (5th Cir.1982) ("mere negligence in giving or failing to supply medical treatment would not support an action under Section 1983" (emphasis added)); <u>see also</u> <u>Jackson v. Cain</u>, 864 F.2d 1235, 1246 (5th Cir. 1989). Plaintiff has not alleged the unnecessary and wanton infliction of pain repugnant to the conscience of mankind. <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997).

## C. Denial of Medical Care - 2009

Plaintiff's complaint regarding his first tooth problem involved an alleged delay in medical care, as the problem was ultimately resolved in February 2009 after having his tooth extracted and taking antibiotics. However, in his amended complaint, Plaintiff raises a new denial of dental care claim allegedly taking place one year later. Plaintiff complains that on October 30, 2009, he made his first sick call regarding tooth pain on the other side of his mouth. One month later, on November 30, 2009, dental x-rays were taken. Plaintiff claims that the dentist said that he could not give Plaintiff dental treatment because he was short-staffed. Plaintiff alleges that two days later, on December 2, 2009, he was sent to LSU hospital in Shreveport.

---

indifference." <u>Id.</u> at 537.

Plaintiff complains that "all they did was look at it" and they "sent him back to the prison." [Doc. #8, p.7] On December 3, 2009, Plaintiff was examined by Nurse Aymond. Aymond told Plaintiff that a nerve was exposed, but that she could not treat him because it was a dental issue. Plaintiff has, by his own admission, not been denied medical care. He was examined by the dentist at WNC, sent to LSU Hospital two days later, and seen again per his request at WNC the next day. While Plaintiff disagrees with the diagnosis or treatment by both WNC and LSU hospital, such disagreement does not state a claim under the Eighth Amendment. See Norton, Young, Spears, supra.[5]

## Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's complaint be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and failing to state a claim upon which relief may be granted under 28 U.S.C. §1915(e)(2)(B)(i) and (ii).

Under the provisions of Title 28, Section 636(b)(1)(c) of the United States Code and Federal Rule of Civil Procedure 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to

---

[5]Additionally, given that Plaintiff's last examination was December 3, 2009 and he filed this amended complaint December 14, 2009, it is evident from the face of the pleading that Plaintiff could not have properly exhausted his administrative remedies regarding the December 2009 claim that he was being denied dental care. Thus, the claim would be subject to dismissal for that reason, as well.

another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED at Alexandria, Louisiana, this 26th day of January, 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE